IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BART SIDNEY POSEY, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | NO. 3:20-cv-00121 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## MEMORANDUM OPINION

Petitioner, Bart Sidney Posey, Sr., commenced this action by filing a pro se Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence (Doc. No. 1, "Petition"). Via the Petition, he seeks vacatur of his plea of guilty in his underlying criminal case (No. 3:13-cr-00119). He thus also necessarily seeks vacatur of the 168-month sentence he received.

For the reasons stated herein, the Petition will be DENIED without an evidentiary hearing, and this action will be DISMISSED.

## FACTUAL BACKGROUND

On June 26, 2013, an Indictment was filed in this district against Petitioner and three co-defendants, thus commencing his underlying criminal case (No. 3:13-cr-00119).[1] Petitioner was charged in thirty-seven of the Indictment's fifty-seven counts, *i.e.*, two counts of conspiracy in violation of 18 U.S.C. § 371, ten counts of mail fraud in violation of 18 U.S.C. § 1341, fifteen counts of wire fraud in violation of 18 U.S.C. § 1343, six counts of embezzlement from a health

---

[1] References below to "R." are to the docket numbers in the underlying criminal case, No. 3:13-cr-000119, over which the undersigned did not preside at any point.

care benefit program in violation of 18 U.S.C. § 669, and four counts of money laundering in violation of 18 U.S.C. § 1957.[2] (R. 1). The crux of the allegations, as the Government states accurately enough, was that Petitioner "sold and caused others to sell fraudulent health insurance plans to unsuspecting consumers across the United States. . . . Posey and his co-conspirators ran the operation like a Ponzi scheme – paying off some victims' medical claims with new victim money." (Doc. No. 11 at 2). Petitioner retained Peter Strianse ("Petitioner's counsel" or "his counsel"), a veteran criminal-defense attorney who, by any measure, already had a wealth of experience in defending white-collar and many other kinds of criminal cases in this Court. With his counsel accompanying him, Petitioner made his initial appearance on July 1, 2013 and was released on bond. (R. 10).

It is fair to say that the case dragged on for years, based on, among other things, reportedly a large volume of discovery to review. Finally, the case approached what appeared to be a more or less seemingly firm trial date of January 16, 2018. As it did, on November 5, 2017, Petitioner's co-defendant and ex-wife, Angela Posey, pled guilty to a Superseding Information charging a single count of misprision of a felony, which greatly reduced her exposure, pursuant to an unsealed plea agreement. (R. 303). In that plea agreement (R. 305), she agreed to cooperate, including by testifying at trial if called to do so. (*Id.* at 9-11).

A pretrial conference was held in Petitioner's case on December 29, 2017. The parties discussed various issues typically addressed at a criminal pretrial conference. In addition, there was a particular colloquy involving the Court and counsel for each side that underlies the Petition in its entirety.

---

[2] In asserting that the figure was thirty-five rather than thirty-seven, (Doc. No. 11 at 2), the Government apparently has miscounted.

Each party has quoted at some length the district judge's specific comments at the December 29 pretrial conference on which the Petition is entirely based. Suffice it to say that the district court inquired about the timing of the (Government's) last plea offer, indicated her interest in making plea negotiations more fruitful, encouraged Petitioner's counsel to make a counteroffer, opined that Petitioner's refusal to approve any of the counteroffers his counsel had formulated was "short-sighted," encouraged Petitioner's counsel to continue to speak to Petitioner "given his possible exposure in this case," noted the maximum prison term for the various counts of the Indictment, opined that Petitioner was facing "a lot of time" and the prospect of numerous Government witnesses against him at trial, and expressed confidence that Petitioner's counsel had already been "very realistic" with Petitioner "about his exposure to being convicted for something out of all these counts, something." (R. 445 at 68-70).

Almost three weeks later, on January 16, 2018, Petitioner pled guilty to two counts pursuant to a written plea agreement (R. 345) that he had reached with the Government. Consistent with the plea agreement, he pled guilty to Count Six, charging mail fraud, and to Count Forty-Five, charging theft from a health care benefit program, with the parties contemplating dismissal of the other thirty-five counts at sentencing. (*Id.* at 1-2).

The plea agreement took care to document that Petitioner's entry of a guilty plea, and entry into the plea agreement, were being done voluntarily. On its first page, the plea agreement stated "defendant agrees to enter a voluntary plea of guilty to Counts Six and Forty-Five of the indictment…." (*Id.* at 1). On the second page, it stated "[t]his plea agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 3:13-cr-00119." (*Id.* at 2). And its last statement above

Petitioner's signature stated, "I understand this Plea Agreement, and I voluntarily agree to it." (*Id.* at 13).

Likewise, the plea agreement stated that Defendant understood various trial rights. (*Id.* at 2-4). One was his right to a jury trial: "If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury." (*Id.* at 2). Another was the presumption of innocence; the plea agreement described the Government's burden of proof (beyond a reasonable doubt) at trial and the fact that Defendant could not be found guilty unless all jurors unanimously agreed that the Government met had met that burden. (*Id.* at 3). It likewise described other rights Defendant would enjoy at trial.

The plea agreement also provided that "Defendant will plead guilty because he is in fact guilty of charges contained in Counts Six and Forty-Five of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt[.]" (*Id.*) The plea agreement then laid out facts regarding the nature of the scheme and Petitioner's role in it. (*Id.* at 4-6). Among other things, it noted that Petitioner admitted that he (and his co-conspirators) engaged "widespread fraud to dupe consumers looking for health insurance," accomplished by "sell[ing] fraudulent health insurance plans to unsuspecting consumers across the United States." (*Id.* at 4). It further stated that Defendant admits: that he was "the leader/organizer of the fraudulent scheme," (*id.*); that he "knowingly and willfully embezzled from a health care benefit program $588,539.75 in victim premium money to pay off a personal mortgage," (*id.* at 6); and that the "the fraudulent scheme caused a total loss of $6,524,888.86" (*id.*).

In its final paragraph, as quoted in part above, the plea agreement stated, "I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment . . . . I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it." (*Id.* at 14).

At the outset of the plea hearing on January 16, 2020, Petitioner answered in the affirmative when asked by the district judge whether he understood that "everything you say in court today is under oath and could be used against you in a prosecution for committing perjury or making a false statement." (R. 438 at 2-3). He noted that he was 50 years old and a high school graduate (and, thus, presumably able to read with some proficiency). (*Id.* at 3). He noted that he had gone over the indictment in detail with his counsel, and that he understood the charges against him. (*Id.* at 3-4, 9-10). Petitioner also noted that he was satisfied with his counsel, with whom, Petitioner confirmed, he had discussed the facts of the case, possible defenses, the elements of the charges, and whatever investigation Petitioner wanted his counsel to do. (*Id.* at 10). The district judge went over the maximum penalties (and other possible consequences) on the charges, and Petitioner affirmed his understanding of that. (*Id.* at 10-12). She likewise went over his trial rights with him, and he affirmed that he understood them and the fact that he would be giving them up by pleading guilty. (*Id.* at 12-13).

The district judge then turned to the plea agreement (and plea petition). Petitioner affirmed that he had read them and understood them. (*Id.* at 13). The following colloquy then ensued:

> THE COURT: In pleading guilty, you are admitting the facts set out on pages 4 through 6 of this plea agreement and that those facts establish your guilt beyond a reasonable doubt. Have you read those facts very carefully and are you prepared to admit that they are true?
>
> THE DEFENDANT: Yes, ma'am.

(*Id.* at 14). The district judge then walked through the plea agreement, one provision after another, and Defendant confirmed that this was his understanding of the plea agreement. (*Id.* at 19). The following colloquy then ensued:

> THE COURT: Has anyone put any kind of pressure on you, psychological or physical, to get you to plead guilty?
>
> THE DEFENDANT: No, ma'am.

(*Id.* at 19-20). Very soon thereafter, the following colloquy ensued:

> THE COURT: Is your mind clear and you feel like you know what you're doing?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: I'm going to ask all parties to execute the documents and pass them forward, please.
>
> MR. STRIANSE: Your Honor, Mr. Posey has executed the petition to enter a plea of guilty and the attached plea agreement here in open court.

(*Id.* at 20). Consistent with Petitioner's counsel's statement here, Petitioner indeed signed at the end of the plea agreement, and also initialed every page. (R. 345). An FBI Special Agent then provided the factual basis, reading it virtually verbatim as set forth in the plea agreement. (*Id.* at 21-24). Then, after a point or two of clarification from Petitioner's counsel, the following colloquy ensued:

> THE COURT: Mr. Posey, you heard the facts read by the agent and your lawyer's clarification. With that clarification of that one paragraph, did the agent accurately inform the Court of what you did with regard to Counts Six and Forty-five?
>
> THE DEFENDANT: Yes, ma'am.

(R. 438 at 27). The district judge then advised Petitioner of the elements of the counts to which he was pleading guilty and asked Petitioner whether he thought the Government could have proven those elements had the case gone to trial; Petitioner answered in the affirmative. (*Id.* at 27-28). She then asked him whether he was pleading guilty to Counts Six and Forty-Five, and he responded in

the affirmative; she then asked him whether he did so because he was in fact guilty of those two counts, and he again responded in the affirmative. (*Id.* at 28). The district judge accepted the plea of guilty because, among other things, "[h]e's aware of the plea agreement made on his behalf and has offered to plead guilty voluntarily." (*Id.* at 29).

Petitioner was sentenced more than ten months later, on November 20, 2018. (R. 422). At the sentencing hearing, Petitioner testified (under oath) at considerable length. Once again, he admitted his crimes. Among other things, he admitted that he engaged in a widespread fraud from January 2008 through March 2010. (*Id.* at 134). He admitted that the aim of the fraud was to dupe consumers looking for health insurance. (*Id.* at 136). He admitted that he fraudulently represented to victim consumers that the insurance companies he told consumers were backing his so-called health insurance were either fake or not authorized to do business. (*Id.* at 139-140).

Petitioner later exercised his right to make an allocution, in which he stated, in pertinent part:

> I have had nine years to think about what transpired at my office in Springfield, Tennessee. I can't go back and change the decisions I made prior to 2008, but I want to say I am sorry to the victims. I am sorry to this Court, and I am sorry to my family.

(*Id.* at 174). His contrition was hardly complete, however; indeed, the Government thought he was equivocating to a degree that he should be denied a two-level reduction under the Sentencing Guidelines for acceptance of responsibility. But his counsel fought for Petitioner to receive that two-level downward adjustment, arguing that Petitioner "has certainly shown enough acceptance of responsibility." (*Id.* at 194). He succeeded; ultimately, although finding Petitioner's acceptance "borderline" because he was trying to blame others, the Court did grant a two-level reduction for acceptance of responsibility. (*Id.* at 200-201). Thus, Petitioner received the benefit of this

downward adjustment he sought, precisely because he was deemed to have sufficiently adhered to the admission of guilt made at his plea hearing.

Petitioner received a sentence of, among other things, 168 months' incarceration. (*Id.* at 206). Even though this represented a downward variance from the court-determined guideline range of 188-235 months (*id.* at 202), Petitioner has strongly suggested that he was shocked by the length of the sentence and that he does not like how things turned out. (Doc. No. 1-1 at 2). Unwittingly, perhaps, he has thereby admitted a possible motive for changing the story he told in his plea agreement and at the plea hearing regarding the voluntary, properly advised, and unpressured nature of his plea.

LEGAL STANDARD

To prevail on a Section 2255 motion, a petitioner must demonstrate that the court imposed the sentence in violation of the Constitution, the court was without jurisdiction to impose such a sentence, the sentence was more than the maximum sentence authorized by law, or the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255 (2018).

Section 2255 requires "a hearing on such allegations unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (internal quotation marks omitted); *Ray v. United States*, 721 F.3d 758, 760-61 (6th Cir. 2013); *see also Dagdag v. United States*, No. 3:16-cv-364-TAV, 2019 WL 2330274, at *1 n.1 (E.D. Tenn. May 31, 2019) (internal quotation marks omitted) (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) ("[W]here the record conclusively shows that the petitioner is entitled to no relief, a hearing is not required.").

A petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle the petitioner to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450,

458 (6th Cir. 2008). Even when material facts are in dispute, an evidentiary hearing is unnecessary if the petitioner is conclusively entitled to no relief. *See Amr v. United States*, 280 F. App'x. 480, 485 (6th Cir. 2008) ("Stated another way, the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."); *accord Arredondo*, 178 F.3d at 782. The decision whether to hold an evidentiary hearing is one committed to the sound discretion of the district court. *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) ("A decision not to hold an evidentiary hearing on a motion for relief under 28 U.S.C. § 2255 is reviewed for abuse of discretion.").

The applicable rules address what the district court may (and must) consider in determining whether to order an evidentiary hearing, where (as here) the motion is not dismissed under Rule 4(b) based on the district court's initial review:

> If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

Rule 8(a), Rules Governing Section 2255 Proceedings. As suggested, Rule 7 permits expansion of the record with additional materials relevant to the motion, such as letters predating the filing of the motion, documents, exhibits, answers under oath to interrogatories, and affidavits. Rule 7(b), Rules Governing Section 2255 Proceedings. In this case, the record has been expanded with sworn statements from Petitioner, Petitioner's brother, and Petitioner's counsel.

Having carefully reviewed the record in Petitioner's underlying criminal action, as well as the filings in this action, the Court finds that there are no evidentiary issues to be resolved and that it is unnecessary to hold an evidentiary hearing to resolve Petitioner's claims. Therefore, the Court

will dispose of the Petition without a hearing, as the record conclusively establishes that Petitioner is not entitled to relief on his claims for the reasons set forth herein.

DISCUSSION

Petitioner asserts two grounds for relief. Each is without merit.

I.    GROUND ONE

In Ground One, Petitioner claims that his "guilty plea was induced by improper judicial participation In plea Negotiations, a violation Of Fed. R. Crim. P. 11(c)(1) and Posey's right to due process." (Doc. No. 1 at 4; Doc. No. 10 at 6).

There is no question that the district judge participated in a discussion with counsel about *the desirability of* plea negotiations. That is not to say that the district judge participated *in* plea negotiations. After all, it is one thing to tell[3] counsel for the defendant (in the defendant's presence) that it would be prudent to engage in plea negotiations with the Government; it is quite another to be involved in any ensuing discussions themselves by, for example, proposing terms for a plea bargain or commenting on terms previously proposed by one side or the other. However, the Court certainly understands the good-faith basis for the claim that what happened at the status conference constituted participation by the district judge in plea negotiations; the Court does not begrudge Defendant his assertion that the district judge crossed the line here.

---

[3] The Court notes that if a district judge does encourage exploration of a plea bargain, it is not necessarily with the intent to have the defendant plead guilty, let alone with the intent to "force" the defendant to plead guilty. It well may be instead with the intent to maximize the possibility that the defendant has an additional option, which the defendant is free to exercise or not exercise, for dealing with a difficult situation. The Court realizes, however, that even with such laudable intentions, a court can commit a Rule 11(c)(1) participation violation. But as explained herein, the Court need not decide whether there was in fact such a violation in this case.

Accordingly, the Court will assume *arguendo* that there was judicial participation in plea negotiations in violation of Rule 11(c)(1) (hereinafter referred to as a "Rule 11(c)(1) participation violation").[4] However:

> Rule 11[ ] instructs that not every violation of its terms calls for reversal of conviction by entitling the defendant to withdraw his guilty plea. "A variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. Rule Crim. Proc. 11(h).
>
> In [*United States v. Vonn*, 535 U.S. 55 (2002)], we considered the standard that applies when a defendant is dilatory in raising Rule 11 error, and held that reversal is not in order unless the error is plain. 535 U.S., at 63, 122 S. Ct. 1043; see [*United States v. Olano*, 507 U.S. 725, 731-37, 113 S. Ct. 1770, 1778, 123 L. Ed. 2d 508 (1993)] . Although we explained that in assessing the effect of Rule 11 error, a reviewing court must look to the entire record, not to the plea proceedings alone, *Vonn, supra,* at 74-75, 122 S. Ct. 1043, we did not formulate the standard for determining whether a defendant has shown, as the plain-error standard requires, *Olano, supra,* at 734-735, 113 S. Ct. 1770, an effect on his substantial rights.
>
> It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See *Arizona v. Fulminante,* 499 U.S. 279, 309-310, 111 S. Ct. 1246, 113 L.Ed.2d 302 (1991) (giving examples).

*United States v. Dominguez Benitez*, 542 U.S. 74, 80-81 (2004) (section heading omitted). And judicial participation in plea negotiations in violation of Rule 11(c)(1) is not structural error. *See United States v. Davila*, 569 U.S. 597, 610-11 (2013); *United States v. Dominguez*, No. 17CR336-LAB-7, 2019 WL 1641145, at *4 (S.D. Cal. Apr. 16, 2019) ("Under Rule 11(c)(1), the Court must not participate in discussions leading to plea agreements. Violation of this rule is not structural error[.]" (citing *Davila*, 569 U.S. at 611)). Because a transcript of the entire hearing is available, no evidentiary hearing is needed to confirm what took place.

---

[4] The Court notes that there are other kinds of violations of Rule 11(c)(1) besides Rule 11(c)(1) participation violations, but none are applicable here. Generally, these other kinds of violations are violations of the various subparagraphs of Rule 11(c)(1); by contrast, the prohibition against judicial participation in plea negotiations is set forth in paragraph (c)(1) of Rule 11 and not any of the subparagraphs thereunder.

Thus, Petitioner must make some showing that he was negatively affected by the alleged Rule 11(c)(1) participation violation in this case. That leads to the next question: what kind of showing is required under the circumstances in this case, *i.e.*, where the alleged Rule 11(c)(1) violation was not raised either in the district court (for example, in a pre-sentencing motion to withdraw the guilty plea) or an appeal.

To answer that question, the Court first notes that any claim of a Rule 11 violation can be raised on direct appeal and is procedurally defaulted if it is not. *Martin v. United States*, 160 F. App'x 447, 449 (6th Cir. 2005) (holding, where defendant brought a Section 2255 claim based on an alleged Rule 11 violation but did not assert such claim on direct appeal, the claim was procedurally defaulted). This applies to Rule 11(c)(1) violations just as with other Rule 11 violations. *United States v. Magallanes*, 10 F. App'x 778, 783 (10th Cir. 2001) (holding that defendant procedurally defaulted on his Rule 11(c)(1) claim by failing to raise it on direct appeal); *Premachandra v. United States*, 101 F.3d 68, 69 (8th Cir. 1996) (holding that because claim of Rule 11(c)(1) violation "was not raised on direct appeal [it] is therefore procedurally defaulted.").

To obtain relief under Section 2255 based on errors that were not raised on direct appeal, a petitioner "must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady,* 456 U.S. 152, 167–68 (1982). This standard is "a significantly higher hurdle than would exist on direct appeal." *Id.* at 166. A Section 2255 petitioner does have an alternative to meeting this high hurdle: showing actual innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998) (noting that a defendant may alternatively obtain relief under Section 2255 based on errors not raised on direct appeal if he demonstrates actual innocence) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).[5]

---

[5] "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 622.

More recently, the Sixth Circuit has made clear the requirements for a Section 2255 petitioner to obtain relief based on a procedurally defaulted claim.

> Because [the petitioner, Martin] did not raise his claim of a claim on direct appeal, it is procedurally defaulted and we may not entertain the claim unless Martin can show cause for the default and prejudice stemming from it or can show that he is actually innocent of the crime.

*Martin*, 160 F. App'x at 449; *see also id.* ("Both before and after [*Dominguez*] *Benitez,* we have required claimants to demonstrate actual innocence or both cause and prejudice when raising procedurally defaulted claims in a § 2255 motion.")

The instant case is like *Martin* not only with respect to the applicable (alternative) requirements for obtaining relief, but also with respect to the only possible avenue for satisfying those requirements:

> Martin does not make any claim of actual innocence. And the only conceivable source of the default is ineffective assistance of counsel. *See, e.g., Henderson v. Collins,* 262 F.3d 615, 636 (6th Cir. 2001) (recognizing that ineffective assistance of counsel may constitute cause for a procedural default).

*Id*; *see also Holladay v. Haley,* 209 F.3d 1243, 1254 (11th Cir. 2000) ("Constitutionally ineffective assistance of counsel can constitute cause" under *Frady*). "In order to do so, however, the claim of ineffective assistance must have merit." *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000).

Petitioner does not claim actual innocence, and any such claim would have been frivolous anyway, given his admission of his crimes in his signed plea agreement, at his plea hearing, and at sentencing. Thus, Petitioner must establish cause and prejudice for the procedural default, which could only be ineffective assistance of counsel (hereinafter, "IAC").

And indeed, Petitioner does complain about his counsel's alleged ineffectiveness in failing to advise him that the alleged Rule 11(c)(1) participation violation was a valid ground for appeal.

Petitioner states such alleged ineffectiveness as a separate ground for relief ("Ground Two") on the Petition, and not as ground to excuse his procedural default on Ground One; in fact, Petitioner does not expressly offer any excuse for defaulting on Ground One. Nevertheless, the Court will construe such allegation of IAC as an alleged ground for excusing his procedural default.

The standard for IAC in the context of excusing procedural default is the familiar standard of *Strickland*. *See Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989). Thus, the issue is whether trial counsel's performance fell below the wide range of professionally competent representation. *Id.*

One district court, addressing a procedurally defaulted claim (one based on an alleged Fourth Amendment violation), relatively recently explained in concise fashion the role of an IAC claim in a Section 2255 petitioner's attempt to excuse procedural default.

> Ineffective assistance of counsel may satisfy the cause exception to a procedural bar, but only if the claim of ineffective assistance is meritorious. *Greene*, 880 F.2d at 1305. This may turn on the merits of the underlying freestanding claim.
>
> Assuming [the petitioner] were to assert ineffective assistance of counsel as cause for his failure to present a freestanding Fourth Amendment claim on direct appeal, he fails to show that his Fourth Amendment claim is meritorious.

*Millender v. United States*, No. 1:16CV45-MHT, 2018 WL 1555653, at *9 (M.D. Ala. Mar. 9, 2018), *report and recommendation adopted*, No. 1:16CV45-MHT, 2018 WL 1546364 (M.D. Ala. Mar. 29, 2018). Thus, it is simply not deficient performance for counsel to omit non-meritorious claims on appeal. *See Davis v. United States*, No. 1:12-CR-362-CAP, 2015 WL 5944280, at *4 (N.D. Ga. Oct. 13, 2015); *Laguerre v. United States*, No. 04-20487-CR, 2010 WL 2402898, at *15 (S.D. Fla. Jan. 12, 2010) (holding that if there would have been no merit to the underlying issue, the petitioner "cannot establish deficient performance or prejudice arising from counsel's failure to further pursue this issue"), *report and recommendation adopted*, No. 08-20413-CIV,

2010 WL 2402912 (S.D. Fla. May 28, 2010). And as set forth below, any appeal by Petitioner based on an alleged Rule 11(c)(1) participation violation would have been without merit.

The Court first notes that for Petitioner to have achieved vacatur on appeal based on the alleged Rule 11(c)(1) participation violation, he would have need to do more than merely establish the violation (which the Court herein is assuming *arguendo* he would have done), because such violation is not automatically grounds for relief on direct appeal. Instead:

> Rather than automatically vacating [the petitioner's] guilty plea because of the Rule 11(c)(1) violation, the Court of Appeals [w]ould have considered whether it was reasonably probable that, but for the [District] Judge's exhortations, [the petitioner] would have exercised his right to go to trial. In answering that question, the [District] Judge's comments should be assessed, not in isolation, but in light of the full record.

*Davila*, 569 U.S. at 612. Here, referring to the comments of the district judge constituting the alleged Rule 11(c)(1) participation violation, Petitioner himself avers:

10.     When Judge Trauger said these things in Court, I interpreted it point blank as meaning that I needed to cut some kind of deal right now.

11.     After I walked out of the courtroom I remember telling Strianse, "Damn, she pretty much told me that I needed to plead to something." In response, Strianse said that "they are pushing to get this done. They are down one judge and she is overbooked." I also recall Strianse saying that the judge knew the trial would last weeks and was trying to avoid that.

12.     The judge's comments during the December 29, 2017, hearing is what caused me to agreed to plead guilty. Up until that point I had steadfastly insisted that I was innocent and wanted to go to trial.

13.     However, after hearing the judge's comments, I felt that I had no real choice but to plead guilty. So I did so very reluctantly.

(Doc. No. 1-1 at ¶¶ 10-13). Petitioner's current attorney has since argued, in a more qualified manner, that "[t]here is a reasonable probability that but for the Court's comments, Posey would have insisted on going to trial." (Doc. No. 1 at 4). As noted above, this is the applicable appellate standard. So if the Sixth Circuit would have agreed with Petitioner on this, in the case of a hypothetical appellate claim of a Rule 11(c)(1) participation violation, then Petitioner might be entitled to relief under Section 2255.

But no reasonable appellate court even conceivably would have credited Petitioner's self-serving averments, or even have concluded less definitively that there was at least a reasonable probability that but for the district judge's comments, Petitioner would not have pled guilty. Petitioner's position is utterly belied by the full record in this case. To begin with, as set forth above in considerable detail, Petitioner's (a) signed plea agreement; and (b) statements under oath at the plea hearing (including statements confirming his acceptance and understanding of the plea

agreement) are entirely clear that his decision to plead guilty was his own choice, one made voluntarily and not as the result of any pressure (whether from the district judge, his own counsel, or anybody else). Petitioner may think it convenient to change his tune now even though, whether he realizes it or not, his new tune suggests the possibility that he perjured himself at his plea hearing. The Court is loath to conclude that he did so, rather than presuming that he was being truthful at the time of making his sworn statements at the plea hearing. And the Court is entitled to rely on those statements, rather than contrary assertions made only substantially later. As the Government puts it:

> "A defendant's solemn declarations in open court affirming a plea agreement 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Lemaster*, 403 F.3d at 221. "Where a 'defendant testified at his plea hearing that he had reviewed the plea agreement with counsel, that he understood all of the agreement's provisions, and that his guilty plea was not coerced,' and 'there [was] nothing in the record to suggest that [the] defendant misunderstood the scope of his waiver of appellate rights,' [a court] 'can only conclude that [the] defendant entered his plea agreement—and accepted the waiver of appellate rights contained therein—knowingly and voluntarily.'" *United States v. Crumpler*, 393 F. App'x 321, 326 (6th Cir. 2010) (quoting [*United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004)]). This requirement stems from the fact that "[a] defendant's solemn declarations in open court affirming a plea agreement 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (quoting [*Blackledge v. Allison*, 431 U.S. 63, 74 (1977)], further quotations, citations, and alterations omitted).

> "Thus, in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'patently incredible' and 'patently frivolous or false'" for purposes of determining whether there is any need for an evidentiary hearing. *Id.* In the absence of such extraordinary circumstances, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221-22. "Otherwise, a primary virtue of Rule 11 colloquies would be eliminated—'permit[ting] quick disposition of baseless collateral attacks.'" *Id.* at 222 (quoting *Blackledge*, 431 U.S. at 79 n.19.)

(Doc. No. 11 at 14-15). On this topic, the Government has it right. A district court must be able to rely on a defendant's sworn statements at a plea hearing conducted pursuant to Fed. R. Crim P. 11, and for this reason (among others) they carry a strong presumption of veracity. Indeed, a court conducts a plea colloquy precisely to make sure that nothing improper—*including things like a Rule11(c)(1) participation violation*—is prompting a defendant to plead guilty; if something inappropriate *is* influencing the defendant's decision to plead guilty, then the court can ferret it out *before defendant pleads*. District courts do this important work whenever they are considering a plea of guilty under Rule 11, but to do it fruitfully, they need the pleading defendant to do his or her part by telling the truth when asked about these things. A defendant may *not* be permitted to hold back purported concerns about alleged improper influences that would be disclosed by a candid answer to the district court's questions inquiring about such matters, only to later raise them when things do not work out at sentencing as hoped by the defendant. The undersigned will not permit or incentivize such sandbagging.

Absent very good reason to do so, the Court will not allow a petitioner to create a factual issue on a Section 2255 motion via the simple expediency of claiming (once it suits the petitioner's desire) that his prior sworn statements were actually plain old false. And in this case, there is no reason to believe that, contrary to what Petitioner said in his plea agreement and plea hearing— confirming the voluntary, unpressured, fully advised and fully counseled nature of his plea of guilty—a  reasonable probability exists that he actually would not have pled guilty but for the district judge's alleged Rule 11(c)(1) participation violation.

Significantly, no such reason is provided by the timing of his guilty plea. It was hardly years or even months removed from the alleged violation on December 29, 2017, but it was 18 days later. With almost three weeks in the interim, there is no reason to think that his plea of guilty

was some knee-jerk reaction to the district judge's comments, made reflexively out of fear. The record suggests, instead, that in this 18-day period his counsel negotiated a plea agreement that Petitioner could live with, and that this is why Petitioner pled guilty.

Nor is any such reason provided by the affidavit of his counsel filed by the Government. At least by implication, it contradicts the gist of Petitioner's claims by very much downplaying the nature and effect of the district judge's comments regarding plea negotiations. (Doc. No. 11-1 ¶ 6). And Petitioner's counsel's affidavit certainly provides no support at all for the proposition that Petitioner was influenced to plead guilty by those comments.

Nor is any such reason provided by some apparent weakness in the Government's case that would suggest that Petitioner naturally would have been inclined to go to trial. The record reflects that Petitioner was in fact guilty and knew he was guilty, and that it was publicly available information that his ex-wife (also his co-conspirator) was prepared to testify against him. This state of affairs makes it impossible for the Court to disregard Petitioner's own sworn statements and instead embrace Petitioner's uncorroborated new claim—unsupported and implicitly contradicted by his own counsel—that he likely would have taken his chances at trial but for the alleged Rule 11(c)(1) participation violation.

In short, nothing supports Petitioner's self-serving claim. The Court can and does treat it as raising only a patently incredible claim, one that can and should be rejected without an evidentiary hearing. *See Amr*, 280 F. App'x at 485 ("Stated another way, the court is not required to hold an evidentiary hearing [because] the petitioner's allegations cannot be accepted as true because they are contradicted by the record [and] inherently incredible[.]")

The Court also would be remiss if it did not take aim at Petitioner's implication that he was innocent and that part of the problem here with the allegedly flawed guilty plea is that it caused an

innocent man to be found guilty. Petitioner's referenced prior "steadfast[ ] insiste[nce]" upon his "innocen[ce]" appears to be an insistence upon his *actual innocence*, rather than an insistence that the Government could not prove him guilty beyond a reasonable doubt. The former (affirmative protestations of innocence) is something very difference from the latter (defensive insistence that the Government must be put to its burden of proof at trial and will ultimately fail to meet that burden). The latter is always appropriate and never "wrong," but the former can be very wrong indeed; a defendant's affirmative protestations that he is actually innocent can be false, wrong, perjurious (if knowingly wrong and asserted under oath) and just plain nonsense. And the record is entirely clear that any affirmative insistence by Petitioner that he was actually innocent: (a) is wrong, period; and (b) if it had been true, would have meant that he gave all kinds of false (and possibly perjurious) answers to the district judge at his plea hearing.

To the extent that Petitioner complains that the district judge's comments caused him to drop his "steadfast" (but patently wrongheaded) insistence that he was actually innocent, they served only to deter him from continuing to engage in and embrace a falsehood. The Court fails to see how these comments harmed, or even conceivably could have harmed, Petitioner by dissuading him from what was either a lie or a delusion. And it was likely a lie or delusion harmful to his defense, because it was one he asserted with his own counsel from the outset. (Doc. No. 1-1 at ¶ 3). To the extent that Petitioner wonders why he, in his view, did not get a good result in this case or effective assistance of counsel, he might focus on his own actions, especially his poor decision to continuously assert with his counsel the vital falsity that "he was innocent of the charges." (*Id.*). In short, it is perfectly appropriate for Petitioner to claim that his guilty plea should be vacated because of the alleged Rule 11(c)(1) participation violation and that his guilt instead must be

established at trial by the Government. But any sanctimonious claims of actual innocence will not be countenanced at this stage by this Court. The time to claim actual innocence has long passed.

To be clear, Petitioner's complaint about being dissuaded from going to trial is another matter. As noted above, it is always appropriate for any defendant (whether or not actually innocent) to insist on putting the Government to its burden of proof at trial; every defendant has a due process right to do so, and it is vital that a defendant (no matter his or her guilt or innocence) not be improperly dissuaded from going to trial. So the Court does not begrudge Petitioner complaining that he was improperly dissuaded from going to trial. The problem, however, is that, this complaint is entirely belied by the record in this case, as noted above.

Thus, there would have been no merit to a claim on appeal asserting a Rule 11(c)(1) participation violation. "Because [Petitioner] fails to prove the merits of his freestanding claim, he fails to show that his ineffective-assistance claim is meritorious. Therefore, the alleged ineffective assistance of his counsel does not constitute cause excusing his procedural default arising from his failure to advance a freestanding [Rule 11(c)(1)] claim on direct appeal. He is not entitled to § 2255 relief on this claim." *Millender*, 2018 WL 1555653, at *11. *See also Premachandra*, 101 F.3d at 69 ("Premachandra makes no showing of cause and prejudice that would excuse his procedural default. Therefore, § 2255 relief is barred.").

To the extent that Petitioner would now claim that Ground One encompasses a more general claim that his plea of guilty was overall involuntary—as opposed to merely the result of a Rule 11(c)(1) participation violation—such claim faces the same insurmountable obstacles as does the claim based specifically on the Rule 11(c)(1) participation violation. As the Sixth Circuit explained in *Swain v. United States*, 155 F. App'x 827 (6th Cir. 2005):

> Because she did not raise it (or its equivalent) on direct review, the claim of involuntariness has been procedurally defaulted. *Bousley*[,523 U.S. at 621]

("[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). To overcome procedural default, Swain must show cause and prejudice, or actual innocence. *Id.* at 622-23, 118 S. Ct. 1604. She has not.

*Id.* at 830.[6] Petitioner can make neither showing, because the record conclusively establishes that his plea of guilty was voluntary. Thus, any failure to raise a claim of involuntariness on appeal would have failed, and thus failure to raise it would not have constituted IAC. So it is clear, without need of an evidentiary hearing, that there is no cause or prejudice from IAC necessary to excuse this procedural default.

## II.    GROUND TWO

In Ground One, Petitioner raises what is really the same claim the Court *sua sponte*, addressed above as possible cause and prejudice for the procedural default on Count One, *i.e.*, a particular claim of ineffective assistance of counsel. Petitioner claims that his "counsel was ineffective for failing to consult with Posey about an appeal," since Petitioner "had a non-frivolous ground for appeal—the Court's improper participation in plea discussions in violation of Rule 11(c)(1) . . . and would have appealed had he been properly advised." (Doc. No. 1 at 5). He claims

---

[6] The Government inaptly cites *Swain* for the proposition that "even if Posey could show that the reason for his procedural default was that counsel failed to advise him to appeal on the grounds that the court violated Rule 11 by improperly participating in plea discussions or by coercing him into pleading guilty, that would not amount to a 'showing of cause sufficient to overcome default of an involuntary waiver claim.'" (Doc. No. 11 at 13 (citing *Swain*, 155 F. App'x at 830-31)). The full sentence from *Swain* cited here reads as follows: "When a mistake of law is made by defense counsel without external impediment, there has been no showing of cause sufficient to overcome default of an involuntary waiver claim." *Swain*, 155 F. App'x at 830. But *Swain* here was relying on a part of *Murray* in which the Supreme Court quite clearly was talking specifically about counsel's errors *not* rising to the level of IAC in violation of the Sixth Amendment. *Murray*, 477 U.S. at 488. *Murray* specifically allows for excusal of procedural default based on errors that *do* amount to ineffective assistance of counsel, which by its very nature does not require a showing of some "external impediment." *See id.* ("Ineffective assistance of counsel, then, is cause for a procedural default."); *Laguerre*, 2010 WL 2402898, at *15 ("Attorney error, however, does not constitute cause for a procedural default *unless it rises to the level of ineffective assistance of counsel* under the test enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984)[.]" (citing *Murray,* 477 U.S. at 488)) (emphasis added). Thus, *Swain* does not validly stand for the proposition that if counsel's errors *did* amount to IAC, which is the question to be resolved here as noted above, those errors nevertheless could not constitute "cause" to excuse procedural default.

that this ground constituted a non-frivolous issue for appeal and therefore satisfies Petitioner's burden to show prejudice. (Doc. No. 10 at 9-10).

But just as this claim of IAC failed to establish cause or prejudice for the procedural default on Ground One, it fails as an independent ground for relief.[7] The Court grants that Petitioner had a non-frivolous claim that there was a Rule 11(c)(1) participation violation. Nevertheless, a claim for relief on appeal based on such alleged violation would have been frivolous. As discussed above in detail, Petitioner would have had to show the Sixth Circuit that it was reasonably probable that, but for the district judge's comments, he would have exercised his right to go to trial. And this would have been a non-starter. On the record that would have been before the Sixth Circuit, as discussed above, there is no chance it would have found such reasonable probability. Therefore, Ground Two clearly fails, and no evidentiary hearing is required to dispose of it.

CONCLUSION

For the reasons set forth above,[8] the Court rejects each of Petitioner's two grounds for relief without need of an evidentiary hearing.

An appropriate order dismissing the Petition shall be issued.

*Eli Richardson*

ELI  RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[7] Notably, as a stand-alone claim of IAC, Ground Two does *not* fail on the grounds that it was procedurally defaulted. It was not. "We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

[8] Because the Petition is subject to dismissal in its entirety based on the reasons discussed above, the Court declines to address additional grounds for dismissal raised by the Government (such as its assertion that Petitioner, in his plea agreement, waived any claim based on the alleged Rule 11(c)(1) participation violation).